**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | |
|---|---|
| GENE THROWER, on behalf of himself and others similarly situated, | : <br> : CASE NO. <br> : |
| Plaintiff, | : <br> : |
| v. | : <br> : |
| INTERSTATE BROKERS OF AMERICA LLC, a Florida limited liability company. | : <br> : |
| Defendant. | : <br> / |

**CLASS ACTION COMPLAINT FOR DAMAGES
DECLARATORY AND PERMANENT INJUNCTIVE RELIEF REQUESTED
DEMAND FOR A JURY TRIAL**

Plaintiff, GENE THROWER ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant, INTERSTATE BROKERS OF AMERICA LLC ("Defendant") pursuant to the private right of action provisions in the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(c)(5), the Florida Telephone Solicitation Act (the "FTSA"), Fla. Stat. § 501.059(10)(a), and the Florida Telemarketing Act, Fla. Stat. (the "FTA"), Fla. Stat. § 501.625.[1] On personal knowledge, investigation of counsel, and on information and belief, Plaintiff alleges as follows:

**NATURE OF ACTION**

1. In March and April of this year, Defendant placed multiple telemarketing calls and sent multiple text messages to Plaintiff's personal cellular telephone for the purpose of selling Defendant's insurance products and services to Plaintiff. Defendant made such calls and texts

---

[1] The FTSA, Fla. Stat. § 501.059 *et seq.*, and the FTA, 501.601 *et seq.*, are collectively referenced herein as the "FTCPA."

despite Plaintiff having registered his telephone number on the national do-not-call registry in January 2024, and without Plaintiff's prior express written consent. Defendant also used an automated system for the selection or dialing of telephone numbers to call Plaintiff, and placed more than three commercial telephone solicitations in a 24-hour period on the same subject matter.

2. Plaintiff brings this action for injunctive relief and statutory damages arising out of and relating to Defendant's conduct in negligently, knowingly, and/or willfully initiating more than one telemarketing telephone call/text within a 12-month period, and more than three telemarketing telephone calls/text within a 24-hour period, to Plaintiff and class members on their residential telephone lines which have been registered on the national do-not-call registry, without prior express consent, and with the use of an automated system for the selection and dialing of telephone numbers, in violation of 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(c)(2), and Fla. Stat. §§ 501.059(8)(a) and 501.616.

**PARTIES**

3. Plaintiff is an individual residing in Macclenny, Baker County, Florida.

4. Defendant is a Florida limited liability company with its principal place of business located at 1500 W. Cypress Creek Rd., Suite 206, Fort Lauderdale, Broward County, Florida 33309.

**JURISDICTION AND VENUE**

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings this action pursuant to 47 U.S.C. § 227 *et seq*.

6. This Court has supplemental jurisdiction over Plaintiff's FTCPA claims pursuant to 28 U.S.C. § 1367 because such claims form part of the same case or controversy as Plaintiff's TCPA claim and all of Plaintiff's claims arise out of a common nucleus of operative fact.

7. This Court has general jurisdiction over Defendant because it is incorporated in this State and its principal place of business is in this District.

8. This Court has specific jurisdiction over Defendant because Defendant purposefully availed itself to the Florida marketplace by directing its telemarketing calls and texts to Florida residents and to Plaintiff's cellular telephone, which is located in Florida.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and is subject to the Court's personal jurisdiction with respect to this action.

## TCPA BACKGROUND

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

A. The National Do-Not-Call Registry

11. 47 U.S.C. § 227(c) of the TCPA requires the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12. The national do-not-call registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the national do-not-call registry and provides a private right of action against any entity that makes those calls/texts, or "on whose behalf" such calls/texts are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

15. The FCC has issued rulings clarifying that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided by the individual. 2012 FCC Order, 27 FCC Rcd. at 1839 ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer—providing permission in writing—to authorize autodialed or prerecorded telemarketing calls. . . .").

## FLORIDA TCPA BACKGROUND

16. Florida's Telephone Solicitation Act and Telemarketing Act are in many ways broader than the federal TCPA, providing even stronger protections to recipients of telemarketing calls in Florida than the TCPA.

17. Like the TCPA, the FTCPA prohibits making telemarketing calls and text messages to persons that requested to not be called or texted in the future: "A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission." § 501.059(5).

18. Further, the FTCPA is broader than the TCPA in its definition of the types of telephone systems through which telemarketers are not allowed to place any solicitation calls without prior express consent. The FTCPA provides that a "person may not make or knowingly

allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." § 501.059(8)(a). Unlike the TCPA, there is no mention of random number generation, and it is not required under the FTCPA for an autodialer to use a random or sequential number generator. As alleged herein, Defendant used an automated system for the selection or dialing of telephone numbers to call Plaintiff and class members.

19. Under the FTCPA, "[t]here is a rebuttable presumption that a telephonic sales call made to any area code in [Florida] is made to a Florida resident or to a person in [Florida] at the time of the call." § 501.059(8)(d).

20. The FTCPA allows Plaintiff and class members to recover actual damages or $500, whichever is greater, and allows a court to treble the award if it finds the violation was knowing or willful. § 501.059(10)(a), (10)(b). The FTCPA also provides for recovery of attorney fees and costs to the prevailing party. § 501.059(11)(a).

21. The FTCPA also states "a commercial telephone seller or salesperson making a commercial telephone solicitation call may not: (a) Intentionally act to prevent transmission of the telephone solicitor's name or telephone number to the party called when the equipment or service used by the telephone solicitor is capable or creating and transmitting the telephone solicitor's name or telephone number. (b) Use technology that deliberately displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller. A commercial telephone seller or salesperson who makes a call using such technology commits a misdemeanor of the second degree." § 501.616(7)(a), (7)(b). As discussed herein,

Defendant routinely spoofs and conceals the number from which it is calling, and often conceals its name from call recipients' caller IDs.

22. Finally, the FTCPA prohibits commercial telephone sellers or salespeople from making "more than three commercial telephone solicitation calls from any number to a person over a 24-hour period on the same subject matter or issue, regardless of the phone number used to make the call." § 501.616(6)(b). For violations of § 501.616, the FTCPA allows Plaintiff and class members to recover "actual damages and/or punitive damages, including costs, court costs, and attorney's fees" in addition to "any other penalties or remedies provided under law."

## FACTUAL ALLEGATIONS

23. Defendant is a "person" as the term is defined by 47 U.S.C. § 153(39).

24. Defendant purports to assist consumers with searching for and purchasing health insurance products. In some of its calls and text messages to consumers, Defendant refers to itself as "Major Health Enrollment Center." Defendant's consumer facing website address is www.mhecenter.com. The Terms of Use link at the bottom of Defendant's main web page identifies Major Health Enrollment Center as an alias for Defendant. *See* Ex. A ("Definitions . . . For the purposes of this Privacy Policy . . . Company (referred to as either "the Company," "We," "Us," or "Our" in this Agreement) refers to Interstate Brokers of America").

25. Defendant's website explains it "start[s] off by finding out what our customers can afford and what is most important to them in medical coverage then match[ing] them with the best plan for their needs in their price range." *See* Ex. B. Defendant's website asks consumers: "Let us help you find the perfect health insurance policy." *Id*.

26. At no point has Plaintiff sought out or solicited information regarding Defendant's products or services prior to receiving the telemarketing calls and text messages at issue.

6

27. Plaintiff has never consented in writing, or otherwise, to receive telemarketing calls or text messages from Defendant. Plaintiff has never provided Defendant with his telephone number.

28. Plaintiff's cellular telephone number, 904-XXX-3880, is a residential telephone line.

29. Plaintiff registered this telephone number on the national do-not-call registry on January 30, 2024.

30. Despite this, Plaintiff received at least three telemarketing calls and three text messages from Defendant between March 31, 2024 and April 3, 2024.

31. Specifically, on March 31, 2024 at 10:23 AM ET, Plaintiff received a call from telephone number 904-830-5300. Plaintiff answered the call and heard the telltale pause of an autodialer before the caller's voice began. The caller identified himself as, "Keyshawn," but shortly thereafter the call dropped and Plaintiff was disconnected.

32. At 10:31 AM ET, Plaintiff received a text message from the same number:

> Sunday, March 31
>
> have you qualified for your $2400 subsidy from Major Health Enrollment Center? Call us back now at (904) 830 5300 to see if you're eligible! Reply STOP to opt out       10:31 AM

33. At 12:25 PM ET, Plaintiff received another call from the same number. Again, Plaintiff heard a pause before the caller's voice began. Again, shortly after the caller came on the call dropped and Plaintiff was disconnected.

7

34. Plaintiff attempted to call 904-830-5300 back twice to ascertain who was calling him, and for no other purpose. However, each time Plaintiff called, the call was disconnected immediately. Plaintiff's outgoing calls were placed at 3:01 PM ET and 3:02 PM ET.

35. At 3:03 PM ET, Plaintiff received a call from telephone number 888-668-0206. This time the caller identified himself as, "John." John asked Plaintiff if he had health insurance, mentioned the Marketplace and a $2,400 subsidy, and wanted Plaintiff to apply for coverage with an insurance company. Plaintiff asked John for a callback number and John provided the 888-668-0206 number.

36. The next day, April 1, 2024, Plaintiff placed a call to the 888-668-0206 number at 10:45 AM ET to ascertain the identity of the company for whom John worked, and for no other purpose. Plaintiff spoke with a woman who picked up the call; he asked her for the website of her company. At first the woman was reluctant to give him a website, but Plaintiff explained he wanted to confirm it was a legitimate company calling him. She ultimately disclosed the website www.mhecenter.com. Plaintiff ended the call at this time.

37. The same day, Plaintiff received another text message from 904-830-5300 at 10:30 AM ET. This message again referenced a "$2,400 subsidy from Major Health Enrollment Center" and asked Plaintiff to give Defendant a call or reply with a date and time during which Defendant could call Plaintiff:

> Monday, April 1
>
> just a quick reminder that you may be eligible for a $2,400 subsidy from Major Health Enrollment Center! Give us a call now or reply with a date and time that works for you and we will give you a call then. Reply STOP to opt out         10:30 AM

38. On April 3, 2024, Plaintiff received another text message from 904-830-5300 at 5:00 PM ET with similar language, this time soliciting a "free, $0 premium health insurance plan":



39. Because Defendant operates from Fort Lauderdale, Broward County (area codes 954 and 754), Plaintiff alleges Defendant intentionally spoofed its Caller ID to show a 904 area code to make it appear its calls were a local Florida number originating from Macclenny, Baker County, as Plaintiff's phone number also starts with a 904 area code. Spoofing phone numbers to appear local is a frequent technique by telemarketers used to increase the chances the call is answered by consumers, tricking them into thinking they are getting a local call.

40. Around the time of these calls, Plaintiff was not researching health insurance plans on the internet, in person, or otherwise. Plaintiff has never interacted with Defendant in any manner, other than through the calls and correspondence described above. Plaintiff did not consent to receive these calls.

41. Plaintiff alleges direct liability because Defendant was the entity that made the calls and sent the text messages to Plaintiff.

42. Plaintiff and all members of the classes defined below have been harmed by the acts of Defendant because their privacy has been violated and they were subjected to annoying and harassing calls and text messages that constitute a nuisance. The calls also occupied Plaintiff's and

9

class members' telephone lines, used up their time, and prevented them from receiving legitimate communications.

43. Punitive and treble damages are warranted in this case because of Defendant's brazen disregard for federal and Florida law regarding telephone solicitation. In February 2022, the FCC proposed a record-setting $45,000,000 fine against Defendant for its wide scale violations of the TCPA and the FCCs rules through unlawful robocalls to consumers. *See* Ex. C. The FCC found Defendant made at least 514,467 prerecorded voice message calls in violation of the TCPA, of which 246,218 were made to consumers on the national do-not-call registry. *Id*. Over two full years after the FCC brought Defendant's unlawful conduct to light, Defendant continues to violate the TCPA and FTCPA as alleged herein.

## CLASS ACTION ALLEGATIONS

44. As authorized by Fed. R. Civ. P. 23(b)(2) or (b)(3), Plaintiff bring this action on behalf of a national class of all other persons or entities similarly situated throughout the United States. Plaintiff also brings this action on behalf of a Florida class of persons or entities similarly situated throughout Florida.

45. Plaintiff proposes the following "National Do-Not-Call Registry Class" definition, subject to amendment as appropriate:

> **National Do-Not-Call Registry Class**: All persons in the United States whose numbers are listed on the national do-not-call registry, and who received two or more telemarketing calls within any 12-month period from Defendant to their residential telephone number 31 or more days after the telephone number was listed on the national do-not-call registry at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated (the "Class Period").

46. Plaintiff proposes the following "Florida Telemarketing Class" definition, subject to amendment as appropriate:

> **Florida Telemarketing Class**: All Florida residents who received a telephonic sales call from Defendant using an automated system for the selection and dialing of telephone numbers at any time from July 1, 2021 through the date the Court certifies the class, and for whom Defendant does not possess a written agreement that (1) bears the signature of the called party, (2) clearly authorizes Defendants or their agents to place telephonic sales call using an automated system for the selection and dialing of telephone numbers, (3) includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered, and (4) includes a clear and conspicuous disclosure informing the called party that (a) by executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and (b) he or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47. Plaintiff represents, and is a member of, the National Do-Not-Call Registry Class and the Florida Telemarketing Class (collectively, the "Classes"). Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any person who made a transaction with Defendant in the preceding 18 months before receiving a telemarketing call/text, any person who has executed a signed, written agreement between the person and Defendant which states that the person agrees to be contacted by Defendant and includes the telephone number to which the calls may be placed, any Judge and/or Magistrate Judge to whom this action is assigned, and any member of such Judges' staffs and immediate families.

48.     **Numerosity.** The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls and text messages. Individual joinder of these persons is impracticable.

49.     **Existence and predominance of common questions of law and fact.** Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, multiple involuntary telephone and electrical charges, the invasion of their privacy, aggravation, annoyance, waste of time, the intrusion on their telephone that occupied it from receiving legitimate communications, and violations of their statutory rights.

50.     The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

51.     The Classes, as defined above, are identifiable through telephone records and telephone number databases.

52.     There are well defined and nearly identical questions of law and fact common to Plaintiff and members of the Classes. The questions of law and fact involving the class claims predominate over questions which may affect individual members of the proposed class. These common questions of law and fact include, but are not limited to, the following:

　　　　a.     whether Defendant systematically made multiple telephone calls and sent multiple text messages to members of the Classes;

　　　　b.     whether Defendant made calls and sent text messages to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls/texts; and

　　　　c.     whether members of the Classes are entitled to treble damages and/or punitive damages based on the willfulness of Defendant's conduct.

53. **Typicality.** Plaintiff's claims are typical of the claims of the proposed class members because they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories. Specifically, the proposed class members are persons who received telemarketing calls and text messages on their telephones without their prior express written consent, or persons in Florida who received calls using an automated system for the selection and dialing of telephone numbers without prior written consent. Plaintiff is a member of the Classes and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the proposed class members.

54. **Adequacy of Representation.** Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA and FTCPA class actions.

55. **Superiority.** Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns the identification of class members, which will be ascertainable from records maintained by Defendant.

56. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes

consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

57. Defendant acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges Defendant's telephone solicitation calls/texts and use of automated systems for the selection and dialing of telephone numbers that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

58. Plaintiff repeats his prior allegations of this Complaint from paragraphs 1-57 and incorporates them by reference herein.

59. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, by making telemarketing calls/texts, except for emergency purposes, to Plaintiff and members of the National Do-Not-Call Registry Class despite their numbers being on the national do-not-call registry in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

60. Defendant's violations were willful or knowing.

61. As a result of Defendant's violations, Plaintiff and members of the National Do-Not-Call Registry Class are entitled to treble damages of up to $1,500 for each call made in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5).

62. Plaintiff and the members of the National Do-Not-Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing

calls/texts to telephone numbers registered on the national do-not-call registry, except for emergency purposes, in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

63. Plaintiff and members of the proposed National Do-Not-Call Registry Class are also entitled to an award of attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

64. Plaintiff repeats his prior allegations of this Complaint from paragraphs 1-57 and incorporates them by reference herein.

65. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, by making telemarketing calls/texts, except for emergency purposes, to Plaintiff and members of the National Do-Not-Call Registry Class despite their numbers being on the national do-not-call registry in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

66. As a result of Defendant's violations, Plaintiff and members of the National Do-Not-Call Registry Class are entitled to an award of $500 in statutory damages for each call made in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5).

67. Plaintiff and the members of the National Do-Not-Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls/texts to telephone numbers registered on the national do-not-call registry, except for emergency purposes, in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

68. Plaintiff and members of the proposed National Do-Not-Call Registry Class are also entitled to an award of attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### Telephone Consumer Protection Act
### Violations of Fla. Stat. § 501.059(8)(a)
### (On Behalf of Plaintiff and the Florida Telemarketing Class)

69. Plaintiff repeats his prior allegations of this Complaint from paragraphs 1-57 and incorporates them by reference herein.

70. The FTCPA provides that a "person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

71. Defendant knowingly and willfully called Plaintiff and members of the Florida Telemarketing Class in violation of Fla. Stat. § 501.059(8)(a) using an automated system for the selection and dialing of telephone numbers. Further, for Plaintiff and members of the Florida Telemarketing Class, Defendant does not possess a written agreement that (1) bears the signature of the called party, (2) clearly authorizes Defendant to place telephonic sales call using an automated system for the selection and dialing of telephone numbers, (3) includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered, and (4) includes a clear and conspicuous disclosure informing the called party that (a) by executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and (b) he or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

72. Plaintiff, individually, and on behalf of the other members of the Florida Telemarketing Class, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under § 501.059(10)(a). Plaintiff and the proposed class members also seek to recover attorney's fees and costs under § 501.059(11)(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendant's actions complained of herein violated the TCPA and the FTCPA;

E. An order enjoining Defendant from making telemarketing calls and texts to numbers on the national do-not-call registry, absent an emergency circumstance;

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. An award of attorneys' fees, expenses, and costs; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a jury trial on all issues so triable.

Dated: May 16, 2024

Respectfully submitted,

*/s/ Rachel Soffin*
Rachel Soffin (FL Bar No. 18054)
rsoffin@milberg.com
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
3833 Central Ave.
St. Petersburg, FL 33713
(865) 247-0080


Aleksandr "Sasha" Litvinov (SBN 95598)
E-Mail: sasha@skclassactions.com
SMITH KRIVOSHEY, PC
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-7404
Facsimile: (888) 410-0415
(*pro hac vice* pending)

*Attorneys for Plaintiff
and the Proposed Classes*